PALM BEACH BANK AND TRUST COMPANY, *Appellant,* v.
GEORGE W. LAINHART AND GEORGE W. POTTER, DOING
BUSINESS AS LAINHART & POTTER; DADE LUMBER COM-
PANY; G. C. HENDERSON; J. O. MCCAULEY AND H. B.
PAXTON, DOING BUSINESS AS PALM BEACH ELECTRIC SUP-
PLY COMPANY; W. R. C. PHILLIPS AND CHRIS
FAGG, DOING BUSINESS AS PHILLIPS & FAGG; DOUGLASS
GRAHAM; JOHN B. ORR; EAST COAST HARDWARE COM-
PANY; M. T. CRABTREE; E. A. FONDER; FRED JOHNSON;
AND W. W. MOTT AND J. W. GLASS, DOING BUSINESS AS
MOTT & GLASS, *Appellees.*

Opinion filed December 12, 1922.

1.  Under the statutes of this State providing for liens in favor
    of laborers and materialmen who may perform labor or fur-
    nish material in the construction or repair of any building,
    etc., the acquisition of the lien does not relate back to the
    commencement of the construction proposed to be carried on
    regardless of who began the work. Such liens are acquired
    individually and separately by each laborer and materialman
    and attach from the moment the labor is performed and ma-
    terial furnished, and if such labor is performed or materials
    are supplied upon a continuing contract to supply the same
    for the building or structure the lien attached or is acquired
    from the moment the first material is furnished or labor sup-
    plied under the contract and covers all material furnished or
    labor supplied thereunder.

2.  All liens in favor of laborers or materialmen are prior in
    dignity to liens acquired thereafter.

3.  Solicitors' fees in favor of materialmen and laborers are not
    allowable in an action or suit against the owner of the prop-
    erty to enforce the lien.

4.  Where cement walks, a pergola, driveway or garage are all
    appurtenant to the buildings erected and included in one plan

or scheme of improvement, liens in favor of laborers or materialmen who perform labor thereon or furnish material therefor attach to the buildings and land upon which they stand.

5. No lien exists in favor of an architect merely for the value of the plans and specifications prepared by him for the owner of the building erected, upon such buildings.

6. Supervising the erection of a building and the selection of materials to be placed therein is such character of labor as the statute contemplates shall be provided for in a lien upon the building erected.

7. When the decree of the Chancellor is supported by substantial evidence the decree will not be disturbed.

An Appeal from the Circuit Court for Palm Beach County, E. C. Davis, Judge.

Decree reversed.

*Blackwell, Donnell & McCracken*, for Appellant;

*H. L. Bussey, Thompson & Winters, A. C. Adams*, and *C. C. & C. E. Chillingworth*, for Appellees.

ELLIS, J.—In April, 1919, Douglas Graham owned certain lands in the city of West Palm Beach and caused a plat to be prepared of said land and designated it "Graham Circle." That plat showed a division of the property into ten small parcels, or lots, with a common entrance on the south line of the Okeechobee road. The entrance is in the form of a horseshoe upon the outer edge of which, fifteen feet wide, is a driveway. Fronting upon this driveway are seven lots numbered from one to seven

inclusive, and upon the east and west sides of the tract are lots numbered nine and ten.

Mr. Graham conceived the plan of constructing upon the seven lots, fronting upon the horseshoe drive, seven dwelling houses and upon the other two lots, numbered nine and ten, two garages for the accommodation of the persons who might occupy the seven dwelling houses, and a pergola within the horseshoe.

In the execution of this plan he employed E. A. Fonder, to prepare the plat and to supervise the erection and construction of all the buildings and structures contemplated by the plan. Prior to the commencement of the work of erecting the buildings, Graham and Fonder made certain arrangement with materialmen and laborers for materials and labor to be utilized in the construction of the buildings, roadways, drives and pergola.

The actual construction of the buildings was commenced on the 22nd of April, 1919, and prior to the 10th of May, 1919, some of the materialmen and laborers had furnished materials and performed labor in the construction of the buildings.

On the 7th of May, 1919, Mr. Graham obtained a loan of fifteen thousand dollars from the Bank of Palm Beach. The debt was represented by three promissory notes of five thousand dollars each and payable in one, two and three years after date respectively. To secure the payment of these notes, Mr. Graham executed and delivered to the Bank of Palm Beach a mortgage upon the land which had been platted as described, at least so much of it as was described by the following words: "Graham Circle in Graham Park, being lots One (1) to Seven (7) inclusive, West Palm Beach, Florida." The mortgage was duly recorded on May 10th, 1919.

On the 5th of February, 1920, Lainhart & Potter, Palm Beach Electric Supply Company and Phillips & Fagg exhibited their bill in the Circuit Court of Palm Beach County against Douglas Graham, Palm Beach Bank & Trust Company, J. B. Orr, East Coast Hardware Company, M. T. Crabtree, E. A. Fonder, Fred Johnson and Mott & Glass to enforce liens for materials furnished and labor performed in the construction of the buildings.

It is alleged that J. B. Orr and M. T. Crabtree furnished certain materials and performed labor in the erection and construction of the buildings and that E. A. Fonder and Fred Johnson each performed labor in and about the erection and construction of the buildings. That Mott & Glass furnished materials and performed labor thereon and that on the 7th of May, 1919, the Bank of Palm Beach, the name of which had been changed to the Palm Beach Bank & Trust Company, made a loan of fifteen thousand dollars to Douglas Graham which was secured by a mortgage as hereinbefore stated.

It is alleged in the bill that the erection and construction of the buildings and improvements upon the land had commenced prior to the making of the loan by the bank to Graham and that the complainants had commenced the furnishing and delivering of materials upon the lands to be used in the construction of the buildings and improvements. At the time of the making of the loan by the bank it knew, and was advised, that the complainants were furnishing materials and performing labor in and about the erection of the buildings and improvements on the land. It is alleged that other persons, to the complainants unknown, had furnished materials and performed labor in the construction of the buildings and that notices of liens in behalf of the complainants had been given to Mr.

Graham and were filed in the office of the Clerk of the Circuit Court for Palm Beach County. And such notices of liens were given and filed at different times from the 15th of November, 1919, to some time in January, 1920.

The bill prayed for an accounting, that a lien in favor of the complainants be declared to exist upon the property, that a receiver be appointed to take possession of it, that the priorities of the different lienors be declared and that the complainants be declared to have a superior lien to that of the mortgage held by the Palm Beach Bank & Trust Company and that Graham be decreed to pay the amount found to be due within a short day to be fixed by the court together with interest and solicitors' fees, and for general relief.

The Palm Beach Bank & Trust Company answered disclaiming any knowledge of materials and labor furnished by the complainants and demanded strict proof of the same. The answer admitted the loan made by it to Graham on the 7th of May, 1919, and denied that at the time the loan was made, and at the time of the recordation of the mortgage that the erection and construction of the buildings had commenced and denied that it had any knowledge that the complainants were furnishing materials and performing labor as alleged in the bill.

The answer set up the making of the loan to Graham and the execution of the mortgage as a basis for affirmative relief and alleged that the mortgage contained a covenant to the effect that if the promissory notes were not paid or the stipulations contained therein performed that the entire sum mentioned in said notes should forthwith become due and payable and that the mortgage also contained an agreement on the part of Graham that he should pay all the taxes, assessments, levies, obligations and en-

cumbrances of every nature on the property. That he had failed to comply with such agreement and that there were liens existing against the property for materials furnished and labor performed. That the Palm Beach Bank & Trust Company desired to exercise its right to declare the amount represented by said notes to be due and that the lien is superior to that of all other claimants who are insisting upon the enforcement of liens for materials furnished and labor performed. The answer prayed that Graham be decreed to pay the amount found due under the note and mortgage together with court costs and solicitors' fees by a short day to be fixed by the court and that in the event of his failure to do so that he and the complainants and all other defendants be barred and foreclosed of all equity of redemption in and to the property and that it be sold and the proceeds applied to the satisfaction of the mortgage indebtedness.

There were answers by J. B. Orr, East Coast Hardware Company, M. T. Crabtree, E. A. Fonder, Fred Johnson and Mott & Glass setting up respectively their liens upon the property for materials and labor furnished and performed and averring the failure of Graham to pay the amounts due them respectively, averring the superiority of their respective liens, praying for the foreclosure of same and the application of the proceeds to the payment of the amounts found to be due them, together with court costs and solicitors' fees.

Testimony was taken before a Special Master, solicitors for all the parties consenting to the order.

Upon the testimony reported by the Special Master the Chancellor, on the 2nd of September, 1921, rendered his final decree, in which he found the facts to be as hereinbefore stated in relation to the ownership of the prop-

erty by Douglas Graham, the platting of the same as de-
scribed, the employment of E. A. Fonder to prepare the
plat and to supervise the erection and construction of the
buildings and as to the date upon which the work was
commenced upon the property and the date of the loan by
the Palm Beach Bank & Trust Company to Graham, the
mortgage and the date of its recordation.

The court found that liens superior in dignity to that of
the Palm Beach Bank & Trust Company existed in favor
of the East Coast Hardware Company, Lainhart & Potter,
J. B. Orr, Phillips & Fagg, G. C. Henderson and Palm
Beach Electric Supply Company, Dade Lumber Company,
Mott & Glass and Fred Johnson.

In each case the court found the amount to be due for
materials furnished and labor performed together with the
interest thereon and allowed a reasonable attorney's fee,
the amount of which the court ascertained, to each of the
said lienors.

The court ascertained the amount due by Graham to the
Palm Beach Bank & Trust Company, together with the in-
terest thereon, and ascertained and allowed a reasonable
attorney's fee to said bank and that it was entitled to a
foreclosure of its mortgage and that its lien on account of
said mortgage was inferior in dignity to the liens of the
materialmen and laborers.

The defendant was ordered to pay the total amount of
the indebtedness, amounting to approximately thirty-eight
thousand three hundred and eighty dolllars for principal,
interest and attorneys' fees, immediately and in default of
such payment that the property be sold and the proceeds
of the sale be applied to the payment of the court costs,
attorneys' fees and sums found to be due to the respective

parties in the order of their priorities as fixed by the decree.

The court decreed also that E. A. Fonder was not entitled to, and did not, hold a lien against the property in as much as his services consisted of, and were confined to, the preparation of plans and specifications and supervising the construction of the work and held that such services did not consist of the performance of any labor upon or in construction of the building.

That M. T. Crabtree had no lien because it appeared from his own evidence that the materials furnished by him were not used in the work.

From that decree the Palm Beach Bank & Trust Company took an appeal on the 14th of September, 1921.

The questions presented upon direct and cross assignments of error are, first; whether the liens in favor of the materialmen and laborers were prior in dignity to the lien of the mortgage in favor of the Palm Beach Bank & Trust Company, second; whether solicitors' fees should have been allowed in favor of the lienors, materialmen and laborers, third; whether the services of B. A. Fonder, as architect and supervisor of the work and construction, entitled him to a lien for the value of such services upon the property.

There is ample evidence to support the findings of the Chancellor as to the facts in so far as they relate to the employment of Mr. Fonder as architect of the plan and supervisor of the construction and erection of the buildings, the date when the work was commenced upon the property, the making of the loan by the bank and the date of the mortgage given by Graham to secure the loan and the amount due to the respective claimants on account of

materials furnished and labor performed and on account of the mortgage indebtedness.

In the case of Peoples Bank of Jacksonville v. Arbuckle et al., 82 Florida 479, 90 South. Rep. 458, the court construed the statute which secures to materialmen and laborers, liens upon buildings for materials furnished and labor performed in the construction thereof.

In that case it was held that such liens were acquired by the performance of labor and the furnishing of materials, and the acquisition of the lien did not relate back to the commencement of the construction proposed to be carried on regardless of who began the work. There is no blanket lien provided for by the statute for the benefit of all materialmen and laborers who may furnish material or perform labor upon a building which attaches upon the property from the moment the first step is taken toward the construction of the contemplated improvement. The liens are acquired individually and separately by each material-man and laborer and if the material is furnished or the labor supplied upon a continuing contract to supply such material or labor for the building or improvement contemplated, the lien attaches or is acquired from the moment the first material is furnished or labor supplied under the contract and covers all material furnished or labor supplied thereunder.

Such liens in favor of any materialmen or laborers so acquired are prior in dignity to any lien accruing thereafter. So that if a materialman under a contract to furnish materials for a proposed building supplies part of the material under his contract today and a mortgage is placed upon the land on which the proposed building is to be erected, tomorrow, that materialman, under our statute as construed in the Arbuckle case, will have a lien superior or

prior in dignity to the mortgage for the value of all materials furnished for that building under his contract less payments on account.

If material is furnished, however, at different times during the erection of a building under different or separate contracts each time, liens will accrue for the material so furnished, some of which may be prior in dignity and some inferior in dignity according to the dates upon which such material is furnished being prior or subsequent to other acquired liens.

We approve the doctrine announced in the Arbuckle case. In the case at bar it is clear from the evidence that all materials furnished and labor performed in the construction of the Graham buildings were not supplied and performed under continuing contracts and that performance of the contracts did not begin in every case before the mortgage lien was acquired. That part of the decree therefore is erroneous.

The court erred in allowing solicitors' fees in favor of materialmen and laborers. The statute making such provision is, as had been pointed out by this court, unconstitutional. See Phillips v. Atwell, 76 Fla. 480, 80 South. Rep. 180; Union Terminal Co. v. Turner Coast Co., 247 Fed. Rep. 727; Nelson et al. v. Selden Cypress Door Co., 78 Fla. 204, 83 South. Rep. 286; Empire Drug Co. v. Smith, 78 Fla. 594, 83 South. Rep. 458; Lowe v. East and West Coast Ry., 79 Fla. 43, 83 South. Rep. 671.

In the case of those materialmen and laborers, who under contract furnished material and labor for buildings, pergola and cement walks, driveways and garages, all of which were appurtenant to the buildings in Graham Circle, or included in the contract therefor, we hold that they were

entitled to liens under the statute. See 27 Cyc. 40; Balch v. Chaffee, 73 Conn. 318, 47 Atl. Rep. 327, 84 Am. State Reports 155; Henry v. Plitt, 84 Mo. 237; Missouri Valley Cut Stone Works v. Brown, et al., 50 Mo. App. 407; Ermentrout's Account, 1 Woodw. (Pa.) 158; Phillips on Mechanic's Liens (2 Ed.) Sec. 165.

The case is differentiated from those which hold that under statutes like ours no liens are allowable for sidewalks and street pavings. In this case all driveways, walks and cement decorations, such as pergolas and pathways were erected upon the tract of land as part of the development of the property. They were essentially appurtenant to, and in a sense, were part of every house or building erected upon the plat, and included in the contract for the erection of them.

As to the claim of E. A. Fonder, we think that the court was in error in designating him as an architect so far as his activities were regarded in relation to the buildings. He was employed not only to draw the plan for "Graham Circle" but he was employed as supervisor or superintendent of the construction and erection of the improvements. In that capacity he acted not as architect but as a kind of foreman in the erection of all the buildings and improvements. In so far as his claim rested upon that service he is entitled to a lien upon the property.

That kind of work is differentiated from the services of an architect in drawing plans and specifications. Supervising the erection of a building and the selection of materials to be placed therein is often done by a skilled mechanic and is such labor as the statute contemplates shall be provided for in a lien upon the buildings or lands. See Blake on Law of Architecture and Building, 147-159.

The decree is reversed with directions to enter a decree upon the evidence in the case in accordance with the views here expressed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.