59 So.2d 27 (1952)
MAULE INDUSTRIES, Inc.
v.
TRUGMAN et al.
Supreme Court of Florida, en Banc.
February 15, 1952.
*28 Blackwell, Walker & Gray and Ray Peterson, Miami, for appellant.
Morehead, Pallot, Forrest & Brown, Miami, for appellees Harry Trugman and Sophie Trugman.
Frank J. O'Connor, Miami, for appellee W.L. Blackiston.
Ralphael K. Yunes, Miami Beach, for appellee Donald M. Foote.
*29 SEBRING, Chief Justice.
The appeal is from a decree granting a motion to dismiss a cross bill. The material facts of the case are that Harry Trugman and Sophie Trugman were the owners and holders of a blanket second mortgage upon eight non-contiguous vacant lots of real property owned by Donald M. Foote, each of the lots being subject to a first mortgage owned and held by Miami Beach Federal Savings and Loan Association to secure moneys lent to Foote with which to construct dwelling houses upon each of the properties. The Trugmans filed their amended complaint against the owner, the first mortgagee, one Blackiston who is alleged in the complaint to have been Foote's general contractor in the construction of the dwelling houses, and Maule Industries, Inc. and several others, who are alleged to be claimants of liens for labor performed and material furnished in constructing the improvements. The amended complaint prayed for an accounting from certain of the defendants of the amounts disbursed from the proceeds of the construction loan in improving each parcel of property and that the amount claimed by the first mortgagee to be due and owing on each of its eight mortgages be reduced by the amount actually expended for improvements on each of the lots.
Maule Industries, Inc. filed its answer and counter-claim to the amended complaint filed by the plaintiffs. In the counter-claim Maule Industries, Inc. alleged that at the time of the visible commencement of work upon the lands involved and at all times when materials were furnished by the counter-claimant, the defendant, Foote, was the owner and holder of the fee simple title to the property; that during the period of construction Blackiston had not been a general contractor under contract to erect the dwellings, but had been employed by Foote, for the consideration of $6,000, to act as his representative in the improvement of said parcels of land as a single operation or project, and in that behalf to contract or procure for him, as the owner of the properties, such labor, services and materials as were required for the construction of the dwellings, to supervise the construction of the dwellings to completion, and to disburse for him such moneys as were considered necessary for the completion of the dwellings; that pursuant to such contract of employment Blackiston entered upon his duties, supervised the construction of the dwellings on all the lots, and as the agent of Foote, and for and on his behalf and not as general contractor, purchased of and from Maule Industries, Inc. certain building materials which were delivered to the several properties and were used in the construction of the dwellings erected on each of the parcels; that not having been paid for his services as supervisor of construction, Blackiston, within 90 days from the date of the last rendition of services pursuant to his employment agreement, filed in the office of the clerk of the Dade County Circuit Court his claim of lien for the value of such services and mailed a copy thereof to Foote; that subsequently Blackiston duly assigned his claim of lien to Maule Industries, Inc., who thereupon became the owner and holder thereof; that not having been paid in full for the materials furnished to Foote at the request of Blackiston, Maule Industries, Inc., within 90 days from the date the last item of building materials was furnished and delivered to the properties involved in the suit, filed in the office of the clerk of the Dade County Circuit Court its claim of lien for the amounts due and owing, and mailed a copy thereof to Foote; that the cross-plaintiff believes that Harry Trugman and Sophie Trugman, the original plaintiffs in the suit, and all other parties named in the suit may claim some right, title, interest in or lien upon the lands, but that whatever claim either of such parties has is inferior and subordinate to the rights and liens of the cross-plaintiffs on the lands involved.
The prayer of the counter-claim is that the lien of the counter-claimant for materials furnished for improvements, and the lien of the counter-claimant, as owner by assignment of the lien for labor performed by Blackiston, be adjudicated and decreed; that an accounting be had of all moneys due to the counter-claimant upon the two liens owned by it; that "the cross-defendants or certain of them" be decreed to pay the sums *30 adjudicated and that in default of payment the properties be sold and the proceeds applied to the amounts found to be due and owing; that in the event the proceeds of the sale be insufficient, the court enter a money judgment "against the said cross-defendants or certain of them for such deficiency."
A motion to dismiss the counter-claim was filed by the plaintiffs, Harry and Sophie Trugman. At a hearing on the motion, grounds urged for the dismissal of the counter-claim were (1) that the counter-claim fails to state a claim upon which relief can be granted, (2) that it affirmatively appears from the counter-claim that the contractor did not serve upon the owners of the property a statement under oath in accordance with the provisions of section 84.04, Florida Statutes, 1949, F.S.A., prior to the filing of the counter-claim, (3) that it affirmatively appears from the counter-claim that it attempts to foreclose two single claims of lien, one for materials and the other for labor and materials furnished for the improvement of several noncontiguous properties.
The motion to dismiss the counter-claim was granted and an appeal has been taken from the order of dismissal.
Assuming the allegations of the counter-claim to be true  as we must for the purpose of this inquiry  the dwellings were constructed upon the various lots in controversy by the owner, Foote, acting through his agent, Blackiston, and not by Blackiston as a general contractor. Therefore, Maule Industries Inc. was in direct privity with the owner, Foote, and as against the owner, and such right, title or interest as the owner had in the properties at the time of the visible commencement of operations, the lien of Maule Industries, Inc. for the value of its materials attached upon the furnishing of materials, and was not dependent upon the filing of any notice of claim of lien. See Sections 84.02, 84.03, Florida Statutes, 1949, F.S.A.; State ex rel. Gore v. Chillingworth, 126 Fla. 645, 171 So. 649; Palm Beach Bank & Trust Co. v. Lainhart, 84 Fla. 662, 95 So. 122; North Bay Shore Land Co. v. Perry, 86 Fla. 322, 98 So. 139; Roughan v. Rogers, 145 Fla. 421, 199 So. 572; Investors Syndicate v. Henderson, 148 Fla. 696, 6 So.2d 629. The defendant, Blackiston, was also in direct privity with the owner by virtue of his contract of employment to supervise construction, and his lien attached upon the rendition of services pursuant to the contract, and was not dependent, as against the owner and his interest in the property, upon the filing of any notice of claim of lien. See sections 84.02, 84.03, Florida Statutes, 1949, F.S.A.; Rieck & Fleece v. Cunniff, 138 Fla. 742, 190 So. 8; Palm Beach Bank & Trust Co. v. Lainhart, supra. After the lien in favor of Blackiston accrued Blackiston assigned it to Maule Industries, Inc., who thereupon became vested with all the right, title and interest of the assignor. Compare section 84.22, Florida Statutes, 1949, F.S.A.; See Spears v. West Coast Builders' Supply Co., 101 Fla. 980, 133 So. 97; Lawson v. Board of Public Instruction of Franklin County, etc., 118 Fla. 246, 159 So. 14. Thereafter, suit on both liens was instituted by the then owner, Maule Industries, Inc., within the time fixed for the institution of such actions. See Sections 86.01 and 86.11, Florida Statutes 1949, F.S.A. Hence as against Foote, and such right, title or interest as Foote had in the lands at the time of the visible commencement of operations, the liens are valid, under the facts shown by the allegations of the counter-claim, and are enforceable in a court of equity. See Sections 84.03, 86.01, and 86.03, Florida Statutes, 1941, F.S.A.
As to certain cross-defendants, including Harry Trugman and Sophie Trugman, the original plaintiffs in the suit, the allegations of the counter-claim are that these parties claim some right, title, interest or lien in the lands involved but that such right, title or interest is inferior and subordinate to the rights of the counter-claimant. These allegations are sufficient to require these defendants to answer the counter-claim and disclose the nature of their interest in the property. See People's Bank v. Arbuckle, 82 Fla. 479, 90 So. 458; Parker v. Gamble, 96 Fla. 343, 118 So. 21, as to priorities between lien claimants and mortgage holders.
*31 One ground urged at the hearing on the motion to dismiss the counter-claim was that the cause of action alleged therein was not maintainable, because the contractor had not served upon the owners of the property a statement under oath in accordance with the provisions of section 84.04, Florida Statutes, 1949, F.S.A., prior to the filing of the counter-claim. In respect to this ground it is sufficient to say that according to the allegations of the counter-claim no general contractor to whom the counter-claimant is supposed to have furnished materials under a sub-contract is involved in this litigation and hence the provisions of section 84.04 are not applicable. Compare Hardee v. Richardson, Fla., 47 So.2d 520.
In connection with this appeal, the parties have presented a final question for our consideration which, in essence, is as follows: Where, in a single project or group building operation, an owner of several non-contiguous lots of land constructs a dwelling house and improvements upon each of his properties, may a materialman with whom the owner has entered into contract to furnish necessary building materials for the project file and foreclose a single claim of lien against all the lots, as a whole, for the materials furnished by the materialman to each of the properties?
It is difficult to understand how this question is material to the basic issue whether the counter-claim states a cause of action entitling the cross-plaintiff to some equitable relief as against the parties named as cross-defendants, and particularly as against the Trugmans, who are the only parties complaining. But inasmuch as the parties to this appeal deem it material and it cannot be said to be wholly immaterial in view of the fact that the question may have some bearing upon the ultimate decision as to the amount of lien that should be impressed against each parcel of property in the event the counter-claimant prevails at the trial, the question will be decided, even though the issue more appropriately should have been raised by motion for better particulars under Florida Equity Rule 25, 31 F.S.A.
Section 84.15 Florida Statutes 1941 provides, F.S.A. in part, that "Where the amount demanded is for labor or services performed or materials furnished for more than one improvement on a single lot * * or for a single improvement on contiguous or adjacent lots * * * or for more than one improvement to be operated as a single plant but located on separate lots * * * and made or to be made in each case under the same direct contract * * a lienor shall be required to file only one claim of lien covering his entire demand against such real property. If two or more lots * * * are improved under the same direct contract * * * and the improvements are not to be operated as a single plant, a lienor shall, in claiming a lien, apportion his contract price between the several lots * * * and improvements thereon upon which he has performed labor or services or for which he has furnished materials and shall file a separate claim of lien for the amount demanded against each lot * * * and the improvements thereon. * * *"
Assuming for the sake of argument only that the statute has some applicability under the facts alleged in the counter-claim, it is plain that the only part of the statute that could conceivably apply, so far as the claim for furnishing materials is concerned, is that portion which authorizes a materialman to file a single claim of lien against several lots where improvements are placed thereon to be operated as a single plant.
It is shown by the counter-claim that though the improvements in question were constructed by the owner as a single project or group operation, the improvements were separate dwelling houses erected for resale upon lots that were non-contiguous. Under these circumstances we are unable to accept the contention of the appellant that the improvements were "to be operated as a single plant"; for, according to the authorities, the word "plant", as used in the statute means property to be used in carrying on some single trade or business, and cannot be applied to private dwellings where the only business to be carried on is *32 housekeeping. See Todd v. Gernert, 223 Pa. 103, 72 A. 249.
From the conclusions reached it follows that the counter-claim is not without equity and hence that the decree appealed from should be reversed.
It is so ordered.
TERRELL, CHAPMAN, THOMAS, ROBERTS and MATHEWS, JJ., concur.
BARNS, J., concurs specially.
BARNS, Justice (specially concurring).[1]
Is an owner of property who has accepted labor, services and material for the improvement of his property to be permitted to defeat or impair the enforcement of the statuary lien merely because no "notice" of such items has been filed as allowed by section 84.15 F.S.A.?
The appellant was counter-claimant below. Its counterclaim sought the enforcement of a materialman's lien against the property of Foote and, likewise, the enforcement of a lien of one Blackiston for labor and services, which latter lien Blackiston is alleged to have assigned to the appellant.
The appellant's counterclaim is for a balance of $3,501.21 and the assigned Blackiston lien is for a balance of $2,190.96. The counterclaim alleges the furnishing of the material, labor and services; that the notices of liens were filed of record within 90 days after the date on which the material or labor was last furnished. The counterclaim alleges that Blackiston "was the representative of Donald M. Foote for the purpose of supervising the construction of improvements upon the lands involved in this suit" which improvements were dwellings on different lots (which did not adjoin) and that the material was furnished to Foote.
A motion of the appellee-cross-defendants to dismiss the counterclaim was sustained and hence this appeal from the final decree.
Chapter 84 F.S.A. provides for the acquisition of liens and the first sentence of Section 84.02 F.S.A. thereof states: "A contractor, sub-contractor, materialman or laborer shall, subject to his compliance with the provisions of this chapter and to the limitations of this section and to the provisions of §§ 84.04 and 84.05 and subject to the priorities established by §§ 84.06 and 84.20, have a lien on the real property improved for any money that shall be owing to him for labor or services performed or materials furnished in accordance with his contract and with the direct contract."
Section 84.14 and 84.15 F.S.A. relate to filing of "notice of lien" but we should remember that it is the foreclosure of the "lien" that is involved here and not a "notice of lien." A "notice of lien" is to be distinguished from the lien. To illustrate, a "notice" of the mortgage is not a mortgage. Section 84.15 F.S.A. is of no application here but if it were, it should be read as a whole so as to make all parts harmonize with each other in such a way as not to be destructive of the obvious intent and no clause, phrase, sentence, paragraph or section should be given a construction that would defeat the general purpose or object of the law. The statute is passed as a whole and the several parts or sections are all to be construed as parts of a whole. If Section 84.15 F.S.A. is to be construed, then all the provisions of the section should be construed together. Section 84.15 qualifies Section 84.14 F.S.A. and the two sections should be read together in order to be correctly understood; and, also, that Sections 84.14 and 84.15 F.S.A. should be treated in pari materia with Sections 84.02 and 84.04 since they all relate to "notice" even though not in juxtaposition.
The filing of a notice is provided for by the statutes in order to warn those who may deal with the property without notice of the claims of those who have furnished material and labor for its benefit. As to the claim of Blackiston *33 against Foote, there was no need of any notice as Foote and Blackiston dealt with each other directly. As to the claim of the appellant against Foote, there was no need of notice as, according to allegations of the bill, there was privity between the appellant and Foote when appellant furnished material to Foote for the improvement of the properties.
The real problem presented by this appeal is not new. This court recently speaking through Mr. Justice Terrell in Weed v. Horning, 159 Fla. 847, 33 So.2d 648, 650, a similar case, held:
"We are also convinced that appellees' second contention viz.: under the facts stated, there is no basis for a lien in its favor, is without merit. This contention is predicated on the theory that appellant did not file the cautionary or such other notices as are required by Section 84.02 et seq., Florida Statutes 1941, F.S.A. * * *.
"* * * The statute creates the lien in favor of those who do the work or construct the improvement and the bill of complaint alleges that the notice of lien was given. Under the facts in this case, it served no useful purpose. The cautionary notice provided by Section 84.04, Florida Statutes 1941, F.S.A., was not required in this case. It excepts laborers, regardless of by whom they are employed and those contracting directly with the owner, from its provisions. The lessee in this case was to all intents and purposes the owner and was well within this exception. Section 84.01, F.S.A. [1941].
"Lien laws like that in question were designed to protect laborers and materialmen and should be liberally construed to accomplish that purpose. When the contract is made direct with the owner, or his agent, as in this case, neither the cautionary notice nor the record lien notice is necessary as prerequisite to enforce the lien. Hendry Lumber Company v. Bryant, 138 Fla. 485, 492, 189 So. 710." (Italics supplied.)
One of the many other cases which seems to be in conflict with those now entertaining a dissentient view is the previous decision of this court of Hendry Lumber Company v. Bryant, 138 Fla. 485, 492, 189 So. 710, 712, approved by the foregoing Weed case, which held:
"The entire Act [Chapter 17097 now Chapter 84 F.S.A.] must be construed together and, when so construed, it is clear that the Act did not contemplate the record of lien notice as a prerequisite to enforce a lien for materals furnished by materialman under contract direct with the owner. As between them there would be nothing to be accomplished by the service and record of notice. The statute creates a lien if and when a materialman furnishes materials to the owner of lands for the construction of buildings on such lands. The owner is charged with the notice of such lien under the statute. The materialman acquires the lien by furnishing the material and as between these two a notice or record of notice, or record of claim of lien, can serve no useful purpose. (Italics supplied).
"It is held that statutes of this sort should be liberally construed so as to afford the laborers and materialmen the greatest protection compatible with justice and equity."
In Roughan v. Rogers, 145 Fla. 421, 199 So. 572, 573, in construing Chapter 84 F.S.A. (Mechanics Lien Law), which case has often been approved by this Court, we held:
"The question remaining is whether or not the plaintiff followed the provisions of the Act. [Ch. 84 F.S.A.]. No notice of lien is required to be given the owner by a person who contracts directly with the owner and furnishes materials under such contract to the owner, in order to establish a lien as between owner and such materialman. Hendry Lumber Co. v. Bryant, 138 Fla. 485, 189 So. 710. * * * Appellant contends strongly that the notice of lien was not sufficient to meet the statutory requirements. We have examined the notice and while, as the master stated, it may have been drawn `in a rather slip-shod fashion', it was a substantial compliance with the requirements as set forth in Section 14 of *34 the Act. [84.14 F.S.A.], especially in view of the last paragraph of this section, as follows:
"`The omission of any of the foregoing details, or errors in such claim of lien shall not, within the discretion of the trial court, prevent the enforcement of such lien as against one who has not been adversely affected to a substantial extent by such omission or error.'" (Italics supplied).
Chapter 84 F.S.A., the Mechanics Lien Law, as worded and as construed by the previous decisions of this Court is in pari materia with Chapter 85 F.S.A. and they should be construed together so as to carry out the legislative intent in a consistent manner. In construing what is now Sec. 85.25 F.S.A. in 1923 this Court in North Bay Shore Land Company v. Perry, 86 Fla. 322, 98 So. 139, held:
"* * * As between a materialman or laborer and owner of the property, the lien claimed does not depend upon the record of a notice of such lien. It `shall be acquired by any person, in privity with such owner, by the performance of the labor or the furnishing of the materials.' Section 3517 Rev.Gen.Stat. [85.25 F.S.A.] In Palm Beach Bank & Trust Co v. Lainhart, 84 Fla. 662, 95 So. 122, the court said:
"`The lien attaches or is acquired from the moment the first material is furnished or labor supplied under the contract and covers all material furnished or labor supplied thereunder.'"
Some states provide that the filing of a notice or claim of lien is essential to the acquisition of or the maintenance of an action to enforce such a lien. Other states have provided that the lien attaches upon the furnishing of materials or the performance of the labor or services and that the enforcement of the lien will be allowed when the rights of bona fide creditors or purchasers without notice are not involved.
Of the two classes, this Court has heretofore construed Chapters 84 and 85 F.S.A. as within the latter class and there is no question of the rights of bona fide purchasers or creditors presented by the record. Our statutes do not exact the filing of a notice of lien as a sanction to the right to foreclose the lien but provides that Chapter 84 F.S.A. shall be "construed liberally to secure the beneficial intents and purposes thereof." Sec. 84.33 F.S.A.
The motion to dismiss admits the furnishing of the material and the performance of the labor and services to the owner of the lots and appellant's lien for benefits conferred should not be denied by us on technical grounds inconsistent with the express provisions of the law. The purpose of the lien law was to give a lien on property improved by materials furnished or labor and services performed and it is the duty of the Courts to construe such law so as to make effective the lien by permitting its enforcement and avoid a construction that leads to injustice and a denial of the statutory benefits or creating technical grounds tending to frustrate substantive rights.
Blackiston is not shown to have been a "contractor" within the definition of the Mechanics Lien Law, Section 84.01 F.S.A., but even if he was such a contractor, there is equity in the counter-claim for this court has set that question at rest in Investors Syndicate v. Henderson, 148 Fla. 696, 6 So.2d 629, 632 as follows: "A materialman's lien may be valid, without compliance with Section 4, [now Sec. 84.04 F.S.A.] to the extent, as set out in Section 2, of the amount of the contract price remaining with the owner unpaid to the contractor."
The question before the Chancellor and this Court is whether appellants' counterclaim stated a claim upon which relief can be granted, Equity Rule 33, 31 F.S.A., by the allegations of the "ultimate facts", Equity Rule 28, i.e. is there any equity in the counterclaim upon the facts well pleaded?
It should not be forgotten that it is the sufficiency of the counterclaim that is in question. The sufficiency of the "notice" is not in question because the *35 lien in this case upon the facts stated is not dependent upon notice.
In conclusion, it appears that the appellant's liens attached upon the furnishing of the material and labor, Section 84.02, supra, and that suit has been brought within the period of limitations, see Section 84.21 F.S.A., and it has not been made to appear that the rights of subsequent purchasers are involved.
The notice of lien recorded in the clerk's office may be faulty but any defect in the notice is not determinative of the equity of the bill under the facts alleged. Whether "better particulars" ought to be ordered is a matter to be raised by motion for better particulars under (new) Equity Rule 25 and not by motion to dismiss which latter motion goes to the bill as a whole. It is furthermore to be noted that Section 86.01, Florida Statutes, et seq., provide for the enforcement of "all liens" provided for by the chapters that precede chapter 86 such as chapter 84 F.S.A.
The counterclaim is not without equity and the decree appealed is reversed.
CHAPMAN, J., concurs.
NOTES
[1] Originally written to meet dissentient views of the majority of my fellow justices with whose present conclusion for reversal I am pleased to concur.